Paul J. MOORE et al., Appellants,

v.

TEXAS OIL AND GAS CORPORATION, Appellee.

No. 5962.

Court of Civil Appeals of Texas, Waco.

April 5, 1979.

Putnam Kaye Reiter, Mexia, for appellants.

W. S. Barron, Jr., Brice & Barron, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from a summary judgment. Plaintiff-Appellants Paul J. Moore and Bill M. Doyle brought this suit against Defendant-Appellee Texas Oil and Gas Corporation, same being No. 909 in the trial

court and hereinafter referred to as "the case at bar." In said suit Plaintiffs alleged that in 1959 Alamo National Bank of San Antonio, Trustee, as Lessor, made an oil and gas lease of 28,115.48 acres of land located in McMullen and La Salle Counties, Texas, known as the Washburn Ranch, to Shamrock Oil and Gas Corp., as Lessee. Said lease was for a primary term of five years, with the further provision that after the end of the primary term, said lease should remain in force only so long as operations for the drilling or deepening of a well are conducted upon the subject land, with no more than ninety days elapsing between the completion of drilling or deepening operations on one well and the commencement of drilling or deepening operations on another well. Plaintiffs (a geologist and petroleum engineer respectively) further alleged that during 1965, and while said lease was still in effect, they (Plaintiffs) obtained a farmout of certain rights in said 1959 lease from Shamrock, and drilled several wells on the land embraced by the lease; that in 1971, one James A. Clements negotiated with the original lessee (who was then Diamond-Shamrock Oil and Gas Corp., the successor to Shamrock), to purchase the 1959 lease from Diamond-Shamrock. However, Diamond-Shamrock would not sell the lease unless Plaintiffs Moore and Doyle agreed to relinquish their farmout rights. Plaintiffs further alleged that said Clements as a limited partner and agent for GLM, Ltd., offered to enter into an agreement with Plaintiffs set forth in a letter dated April 22, 1971, hereinafter fully quoted, whereby the Plaintiffs agreed to relinquish their farmout rights from Diamond-Shamrock, and in return GLM, Ltd. agreed to do the following things: (1) commence an exploratory well on subject premises on or before May 10, 1971 (2) assign to Plaintiffs jointly a 1/32 of 8/8ths overriding royalty interest, and (3) if GLM, Ltd. should elect to discontinue drilling operations on successive wells, to notify Plaintiffs of such election, and on request by Plaintiffs, GLM agreed to assign all its right, title, and interest therein back to Plaintiffs. Plaintiffs further alleged that

pursuant to and in reliance upon this agreement they relinquished their rights under their farmout, and in turn GLM, Ltd. conveyed a 1/32 of 8/8ths override to Plaintiffs and timely commenced the subject well; that GLM never elected to discontinue drilling operations on successive wells and therefore were not requested to assign the original lease back to Plaintiffs.

Plaintiffs go on to allege that in February of 1976, Alamo Bank, the Lessor, brought suit in Cause No. 881 in the District Court of McMullen County (hereinafter referred to as "the former case"), to cancel the 1959 lease; that thereafter, Texas Oil and Gas Corporation, Defendant in the case at bar, entered into an agreement with the lessor (Alamo Bank) whereby Texas Oil and Gas agreed to prosecute Cause No. 881 in an effort to cancel the oil and gas lease and spend up to $500,000.00 to accomplish such purpose; and afterwards, Texas Oil and Gas intervened in Cause No. 881. Plaintiffs allege that during the pendency of Cause No. 881, Texas Oil and Gas knew about GLM's obligation to assign the original lease to Plaintiffs upon the election of GLM to discontinue drilling operations; but nevertheless, in spite of all this, Texas Oil & Gas proceeded to, and did, purchase all the interests of GLM and its successors in the original lease, and then abandoned the lease to Alamo Bank and acquiesced in the cancellation of said lease. Plaintiffs further allege that when it became obvious that Texas Oil and Gas was going to release the original 1959 lease back to Alamo Bank, principally for the purpose of wiping out the 1/32 override of Plaintiffs, that Plaintiffs made timely demand upon Texas Oil and Gas to assign to Plaintiffs the original lease, which Texas Oil and Gas refused to do; that on the same day the release by Texas Oil & Gas to Alamo Bank of the 1959 lease was recorded in McMullen County, Texas Oil & Gas recorded a new lease from Alamo Bank to Texas Oil & Gas, granting similar leasehold interests to Texas Oil & Gas as had been contained in the original 1959 lease.

Based upon the above alleged facts, Plaintiffs contended that Texas Oil and Gas has been unjustly enriched at Plaintiffs' expense by releasing the original 1959 lease to Alamo Bank and receiving a new lease with the effect of wiping out Plaintiffs' 1/32 override, and thereby Plaintiffs sought equitable relief therefor to establish a constructive trust upon the new lease for Plaintiffs' benefit; and in the alternative; Plaintiffs sued for $5,000,000.00 damages. Then by way of Supplemental Petition, Plaintiffs alleged that Defendant Texas Oil & Gas tortiously interfered in the business relationship between Plaintiffs on the one hand, and GLM, Ltd., James Clements, Guy L. Mann (a partner in GLM), and Alamo Bank on the other, and by virtue of Defendant's wrongful and unconscionable acts, Plaintiffs have suffered damages.

Defendant-Appellee Texas Oil & Gas set up an answer consisting of a general denial, not guilty, and the following affirmative defenses: statute of frauds, res judicata, estoppel by judgment, estoppel by deed, the parol evidence rule, and good faith purchaser for value.

Defendant-Appellee Texas Oil & Gas moved for summary judgment, which motion the trial court granted and entered summary judgment that Plaintiff-Appellants Moore and Doyle take nothing, from which Plaintiff-Appellants appeal.

Plaintiff-Appellants assert in three points of error that the summary judgment is improper because the record presents genuine issues as to material facts, and the Defendant-Appellee is not entitled to judgment as a matter of law. We sustain these contentions, and thereby reverse and remand the cause for trial on the merits.

In order to understand the posture of the case at bar, it is necessary to review the former case, to wit, Cause No. 881, wherein Alamo National Bank of San Antonio, Trustee, sought to cancel the 1959 oil and gas lease hereinabove referred to. In the former case, Alamo Bank as Plaintiff-Lessor named as parties defendant the various parties claiming an interest in said lease, including Moore and Doyle (Plaintiffs in the case at bar), as well as the partners in GLM, Ltd. In this connection the three partners in GLM, Ltd. were one Volk, James A. Clements, and Guy L. Mann. In the intervening time Guy L. Mann, the general partner in GLM, Ltd., died, and his heirs were made parties defendant in the former case; in addition thereto, the limited partnership had been dissolved. Moore, Doyle, the Mann Estate, and Clements appeared and answered in the former case.

The summary judgment proof in the case at bar shows a written contract between Alamo Bank and Texas Oil and Gas dated April 15, 1976, the substance of which was to the effect that Texas Oil and Gas agreed to assist Alamo Bank in getting the 1959 lease cancelled, and agreed to spend up to a half million dollars in such efforts, and in the event Alamo Bank was successful in Cause No. 881 (the former case) in getting the lease cancelled, that Alamo Bank agreed to execute and deliver a new oil and gas lease on the subject property to Texas Oil and Gas as lessee, giving to Texas Oil and Gas similar rights and benefits as were provided for in the original 1959 lease. The contract further provided that if Alamo Bank were unsuccessful in Cause No. 881 in cancelling the 1959 lease, then the new lease would be void, and the Bank would be entitled to retain the consideration paid to it or in its behalf by Texas Oil and Gas. Said contract further provided that upon execution and delivery by Alamo Bank to Texas Oil & Gas of the new lease, the latter would release any interest it might acquire in the original lease.

The proof further shows that Texas Oil & Gas purchased the interests of the Guy L. Mann Estate, Volk, and Clements as derived by them from and through GLM, Ltd. This put Texas Oil and Gas in the position of owning all the working interest in the 1959 lease. It was at this point that Moore and Doyle called upon and made written demand upon Texas Oil & Gas to assign to them (Moore and Doyle) the original lease in accordance with the terms of the alleged contract Moore and Doyle had with GLM, Ltd., as evidenced by the letter dated April

22, 1971, from Doyle to Guy L. Mann hereinabove referred to. Thereupon, Texas Oil and Gas not only refused to assign the 1959 lease back to Moore and Doyle, but also filed an Intervention in Cause No. 881, praying that the court give Alamo Bank all the relief requested by Alamo Bank, or, alternatively, that the court establish title in Texas Oil & Gas to the original 1959 lease.

Alamo Bank filed a motion for summary judgment in Cause No. 881 which was adopted by Texas Oil & Gas. Moore and Doyle then filed a counterclaim against Intervenor Texas Oil & Gas alleging and setting up their 1/32 overriding interest under the original 1959 lease; that they (Moore and Doyle) had performed substantial amounts of work in efforts to develop production upon said lease; that Alamo Bank and Texas Oil & Gas knew and acknowledged that Moore and Doyle were rightfully entitled to their interest in said lease; that said lease was of great value; then Moore and Doyle pleaded and set up their arrangement whereby they assigned their rights in the lease to Diamond-Shamrock, in return for the agreement by GLM to perform those things hereinabove mentioned as set out in the letter of April 22, 1971, from Doyle to Mann; that Texas Oil & Gas, while well aware of the rights of Moore and Doyle, bought out all the working interests in said lease; then made a contract with Alamo Bank to help Alamo Bank cancel said lease, for the purpose of defeating the rights of Moore and Doyle; that since Texas Oil and Gas has in effect conspired with Alamo Bank to cancel said lease and has acquired in its place a new lease from Alamo Bank, that Moore and Doyle are entitled to a constructive trust to be impressed upon the new lease for their benefit, and alternatively for actual and exemplary damages. Moore and Doyle in said counterclaim also alleged that Texas Oil and Gas intentionally and wrongfully interfered in the business relationship between them and GLM with the end result of defeating their rights in said lease.

Alamo Bank's motion for summary judgment was granted by the trial court which in effect cancelled the 1959 oil and gas lease; however, it is significant to note that in said judgment the counterclaim of Moore and Doyle against Texas Oil & Gas was expressly dismissed without prejudice, and therefore was not litigated or adjudicated in Cause No. 881.

In the case at bar, as stated before, we have an appeal from a summary judgment. The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. Rule 166–A, Tex.Rules of Civil Procedure; *Gulbenkian v. Penn* (1952) 151 Tex. 412, 252 S.W.2d 929, 931. Summary judgment should be granted, and if granted, should be affirmed only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corp.* (Tex.1970) 450 S.W.2d 827; *Harrington v. Young Men's Christian Assn. of Houston* (Tex.1970) 452 S.W.2d 423. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.* (Tex.1965) 391 S.W.2d 41, 47. Also see *Whitten v. Metro Bank of Dallas* (Tex.Civ. App. Waco 1977) 556 S.W.2d 383, no writ.

Bearing in mind the foregoing rules, as we must, we are of the opinion and hold that the record presents genuine issues of material facts that render summary judgment improper.

■ Appellee contends that Appellants' rights, if any they had under the 1959 lease, were barred by res judicata and estoppel by judgment by virtue of the judgment in the former Cause No. 881. We do not see how this is possible when the judgment in Cause No. 881 expressly dismissed without preju-

dice the counterclaim of Moore and Doyle against Texas Oil and Gas, taking into account that the relief sought by Moore and Doyle in the case at bar is with minor differences the same or similar relief sought in the former case. At any rate, this controversy between Appellants and Appellee by the express terms of the former judgment were not litigated or adjudicated.

■ Appellee set up the affirmative defense that it had no knowledge of the claims of Moore and Doyle when Appellee bought up the working interests in the 1959 lease and entered into the contract with Alamo Bank as hereinabove referred to. However, Appellants presented summary judgment evidence to the effect that Appellee Texas Oil and Gas *did* have knowledge of the rights of Moore and Doyle at such times. Therefore we have a material fact issue concerning this affirmative defense, precluding summary judgment as to this particular affirmative defense.

■ Next, Appellee contends that the letter from Doyle to Mann dated April 22, 1971, is unsigned and therefore is inadmissible as being within the statute of frauds and barred by the parol evidence rule. We do not agree. Said letter was addressed to Mr. Guy L. Mann and set out the obligations which Mann assumed to Moore and Doyle in return for Appellants' release of their farmout rights to Diamond-Shamrock. The letter reads as follows:

"April 22, 1971

"Mr. Guy L. Mann
1007 Frito Lay Building
Dallas, Texas 75235

"Dear Mr. Mann:

"At Diamond-Shamrock's request I am preparing a letter releasing them from my farm-out agreement on 25,987.59 acres of The Alamo National Bank Trustee, McMullen and La Salle counties, Texas, so that they may convey this acreage to you.

"It is my understanding that upon your acceptance of this conveyance you will have the following obligations to Paul J. Moore and myself:

"1. Before May 10, 1971, you will commence actual drilling of a well to extend the existing Oil and Gas Lease for another 90 days.

"2. If you elect to discontinue drilling operations on successive wells, you agree to notify me not less than 30 days prior to the expiration of any 90 day period, and on request assign to me all your right, title and interest in the acreage unearned under the terms of the conveyed Oil and Gas lease.

"3. Upon conveyance to you of this Oil and Gas Lease you will immediately assign to Paul J. Moore a one-sixty fourth of eight-eights (1/64 of 8/8) overriding royalty, and to Bill M. Doyle a one-sixty fourth of eight-eights (1/64 of 8/8) overriding royalty, aggregating a total of one-thirty second (1/32) of all the oil and gas produced from the acreage conveyed to you.

Yours sincerely,

Bill M. Doyle

"Agreed to this ——— day of April, 1971.

———————————

Guy L. Mann"

The copy of the above letter as made a part of the summary judgment evidence is unsigned; however, Appellants offered proof that the original of this letter was signed and was last known to be in Guy L. Mann's possession; that after Mr. Mann's death a considerable search of his files was made in order to find the original letter but that such efforts were unsuccessful; that for such reasons the above unsigned copy of the letter was offered as secondary evidence of a lost document. Under this record we cannot say the secondary evidence is inadmissible as a matter of law.

Moreover, the summary judgment proof raises material fact issues bearing upon Appellant's assertion of tortious interference on the part of Appellee into the business relationship and affairs between Appellants on the one hand, and Volk, Mann, and

Clements as partners in GLM, Ltd. on the other. This record presents a complex fact situation involving several parties, with a considerable amount of dealings between and among them, many aspects of which are disputed by Appellants and Appellee. Under this record we cannot say that Appellee is entitled to judgment as a matter of law.

We therefore reverse and remand the cause for trial on the merits.

REVERSED AND REMANDED.